Commonwealth *v.* Gallo, Appellant.

558

Argued April 14, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

 

*B. Albert Bertocchi,* for appellant.

*Paul D. Shafer, Jr.,* District Attorney, for Commonwealth, appellee.

OPINION BY VAN DER VOORT, J., October 9, 1975:

On July 2, 1974, appellant William Gallo was found guilty in a non-jury trial of theft by deception (18 Pa. C. S. §3922).. On November 21, 1974, appellant was sentenced to pay costs in the amount of $90.56, to pay a fine of $1,000, and to serve a term of 3 to 12 months, sentence suspended on condition of payment of the fine and costs. Appeal was taken to this Court from the judgment of sentence.

The facts of the case are as follows: In July of 1973, appellant appeared in the office of David Leveto, a contractor in the home building business in and around Meadville, Pennsylvania. Appellant represented himself as an "account executive" for National Builders Publications, and proposed an agreement with Mr. Leveto whereby appellant would furnish, within 90 days and at little or no cost to Mr. Leveto, a brochure advertising

Leveto's construction business. Leveto would be required to furnish to appellant the names and addresses of his sub-contractors and suppliers, who would be solicited by appellant to place advertisements in the David Leveto Builders' Brochure. The sub-contractors and suppliers would either pay cash for their ads or give Mr. Leveto a credit memorandum. Upon receipt of credit memorandums, Mr. Leveto would be required to pay appellant a sum of money equal to the amount of the memorandums. The written agreement was signed on July 26, 1973, and appellant was furnished with a list of Leveto's sub-contractors and suppliers. Letters extolling the virtues of Leveto's proposed personalized brochure were sent by appellant on Leveto's stationery to the sub-contractors and suppliers on the list. As a result, appellant collected a total of $1,750 ($815 in the form of direct cash payments by the sub-contractors and suppliers, $935 collected from David Leveto).

By September of 1973, Leveto had heard nothing from appellant and he tried to call him at the telephone number listed on appellant's letterhead. No one answered the phone. As the days went by, Leveto became concerned and wrote three letters to the address given on appellant's letterhead. These letters remained unanswered. Along with the letters Leveto made numerous calls, estimated to be 50 in number, in none of which calls was the telephone answered. Being unable to contact appellant by phone, receiving no answer to his letters and hearing nothing from appellant, Leveto went to his local police department which began an investigation. The investigation disclosed that appellant was not an "account executive", but ran a one-man business. He had no office in Pittsburgh, but used his home in Apollo as his office. His mailing address was a Pittsburgh Post Office Box in the East Liberty area. Armed with all these facts and information, Officer George Kellyman brought criminal charges against appellant. As soon as appellant learned of

these charges, he sent the advertisements to a printer and forwarded proofs, by mail, to Leveto and to various suppliers; Leveto refused to accept the proofs.

The statutory charge of Theft by Deception is new in Pennsylvania. The Act of Assembly relating to this offense provides as follows:

"§3922. Theft by Deception

(a) Offense defined.—A person is guilty of theft if he intentionally obtains or withholds property of another by deception. A person deceives if he intentionally:

(1) creates or reinforces a false impression, including false impressions as to law, value, intention or other state of mind; but deception as to a person's intention to perform a promise shall not be inferred from the fact alone that he did not subsequently perform the promise;

(2) prevents another from acquiring information which would affect his judgment of a transaction; or

(3) fails to correct a false impression which the deceiver previously created or reinforced, or which the deceiver knows to be influencing another to whom he stands in a fiduciary or confidential relationship.

(b) Exception.—The term 'deceive' does not, however, include falsity as to matters having no pecuniary significance, or puffing by statements unlikely to deceive ordinary persons in the group addressed."

Appellant argues that the evidence is insufficient to support his conviction—that his actions did not constitute a criminal offense under this section of the Crimes Code. We disagree. There was abundant evidence to show that appellant by deception obtained and withheld property of others, and that he did this intentionally by creating a false impression in the mind of David Leveto. The evidence and the inferences which it supports was carefully outlined in the opinion of the lower court judge as follows:

1. Leveto delivered three checks to Gallo totalling $935.00 (Exhibits 3, 4 and 5) within two weeks of the signing of the contract which were promptly cashed by Gallo.

2. Leveto and his suppliers heard absolutely nothing from Gallo after payments were made. Leveto wrote at least three letters to Gallo at the address on his letterhead and business card and never received any response.

3. Leveto made over fifty telephone calls to the number Gallo listed on his letterhead and business card and could get no answer.

4. Gallo never attempted to correct the impression he created that he was an "account executive" for a "national" publisher. In reality he was sole owner and only employee of a one man operation, operating from his own home in Appollo, Pennsylvania, using his home phone (which was conveniently never answered) and a post office box in Pittsburgh. Gallo told Leveto that National Builders Publications was "a fairly large company" and he was "high up in it."

5. Gallo reinforced the deception by having Leveto show him homes he had built and photographing them for the brochure.

6. Gallo knew or should have known that a delay in production and distribution of the brochure would have substantially decreased its appeal value and the usefulness to the advertisers.

7. No "proofs" of the ads to be run were received by Leveto or any of the suppliers until March of 1974—some seven months after the ads had been contracted and paid for; and only then *after* charges had been filed and Gallo had been arrested on the present charges.

8. Sometime in late August or early September, Gallo went to a supplier, William Stright, and secured an

order for a $110.00 ad (see Exhibit 12). Shortly thereafter, he came back to Stright and told him that his nonpayment of this invoice was holding up production of the entire brochure. Stright then wrote a check to Gallo on September 28, 1973, for $110.00 and then heard nothing from Gallo until six months later (after Gallo's arrest and preliminary hearing), when a copy of his prepared ad was received (Exhibit 11). Not having heard from Gallo, Stright wrote him a letter on December 20, 1973, requesting information on the brochure (Exhibit 13). The letter was ignored and Stright got no answer.

9. Supplier Mancuso gave Gallo a check on August 1, 1973, for $110.00 (Exhibit 14), then heard absolutely nothing from him until he received an ad proof the day after the preliminary hearing in March of 1974. Mancuso had been promised the brochure would be "out" a month or two after he had given his check to Gallo on August 1, 1973. Mancuso was a real estate broker who had changed the name of his company and the delay in publication made his ad worthless.

10. No action to complete the contract was taken by Gallo until after charges were filed in February of 1974. He then hurriedly sent the material to a printer and then forwarded some proofs to Leveto and suppliers, some seven months after he had taken their money.

11. Gallo's explanation that he considered the whole contract cancelled because of some confusion over a Glidden Company credit memo lacks credibility and logic, and is absolutely no excuse for not contacting Leveto and attempting to clarify any problem. Gallo admits receiving a letter from Leveto in January of 1974, inquiring about the

delay but chose to ignore it on the spurious grounds that Leveto had not complied with the contract.

. . . .

13. Gallo testified that he talked to Leveto on August 21, 1973, about the aforementioned credit memo from Glidden Company and after that time considered the contract cancelled. Leveto testified no such conversation regarding the Glidden credit memo took place. Even assuming the truth of Gallo's testimony, we then note that in September of 1973, he was telling supplier Stright (see (8) above) that his nonpayment was holding up production of the whole brochure and then accepted a check for $110.00 on September 28, 1973, after he says he considered the whole contract cancelled. Obviously, Gallo's defense that he considered the contract cancelled as a reason for his delay lacks credibility.

14. The fact that after arrest Gallo then hurriedly sent the ads to the printer and attempted to forward proofs to various suppliers, smacks of an effort to avoid the criminal charge by pretending compliance.

The offense of theft by deception is an enlargement of the earlier statutory crime of obtaining money by false pretenses. Under former law (which also included the crimes of larceny by trick and fraudulent conversion), it was virtually impossible to successfully impose criminal sanctions upon persons operating as appellant operated in the case.before us.[1] The offense of theft by deception

---

1. The law books are so full of examples of the reasons why charges of Obtaining Money by False Pretenses, Larceny by Trick and Fraudulent Conversion were ineffective in many instances of actual business fraud, that a discussion of them is undesirable. Suffice it to say, the deficiencies centered around the difficulty in proving the false representation of an existing fact in a false pretense charge, the existence of an intention to steal at the

was created in large part to criminalize the practice of taking people's money with a facade of good intentions and the actual intent never to perform the promised services. Schemes such as appellant's have made suckers of thousands, and have seriously marred the image of legitimate businessmen and women. The instant case is an example of a type of business operation which the offense of theft by deception was designed to attack—the situation where the actor creates the false impression that he holds an important position with a large organization and that he has a plan for providing valuable services at little or no cost; where the actor and his valuable services become unavailable after the money has been collected; where, upon confrontation with criminal prosecution, the actor makes a belated effort to pretend compliance, or falsely accuses the victim of some infraction of the agreement. The conduct of appellant in this case clearly comes under the offense of theft by deception.

Judgment affirmed.

DISSENTING OPINION BY CERCONE, J.:

I dissent.

In my opinion appellant's business dealings with Mr. Leveto did not constitute theft by deception as that crime is defined in 18 Pa. C.S. §3922. Rather, I view this matter as a contract dispute between two businessmen which does not belong in our criminal courts.

In pertinent part, 18 Pa. C.S. §3922 states as follows.:

"(a) Offense defined.—A person is guilty of theft if he intentionally obtains or withholds property of another by deception. A person deceives if he intentionally:

(1) creates or reinforces a false impression, including false impressions as to law, value, intention

_____

time the money or property was handed over in larceny by trick, and the proof that title to money or property had not passed in fraudulent conversion.

or other state of mind; *but deception as to a person's intention to perform a promise shall not be inferred from the fact alone that he did not subsequently perform the promise;"* (emphasis added).

As the majority notes, Section 3922 represents a substantial enlargement of the prior existing law of obtaining money by false pretenses. See former 18 P.S. §4836. The chief change is that 18 Pa. C.S. §3922 specifically rejects the traditional notion that the deception must relate to an existing fact. See Model Penal Code §206.2, Comment (Tent. Draft No. 2, 1954). However, the law has not so drastically changed that the Commonwealth no longer has the burden of establishing the defendant's original intent to deceive. In other words, in the case at bar, the Commonwealth must prove that the accused purposely made a false promise—a false promise being one that is made with no intention of ever performing, as distinguished from a promise which the promisor originally intends to keep but subsequently decides to breach. Thus, under Section 3922(a)(1), the court's initial inquiry is directed toward determining whether the accused has made a false promise. In making this determination the legislature has specifically provided that the mere fact that the promise is subsequently breached will not, standing alone, constitute sufficient evidence of an original intention not to perform. 18 Pa. C.S. §3922(a)(1). The objective of this statutory limitation is to prevent criminal prosecutions based only on the fact that a promise or contract was breached. Model Penal Code, §206.2, supra. Accordingly, the critical question is: Did the Commonwealth adduce sufficient evidence, other than the accused's subsequent failure to perform, to sustain a conviction? I think not. Although much of the testimony at trial was controverted, there are several undisputed facts which I believe weigh heavily in appellant's favor. It is clear that at all times in his transactions with Mr. Leveto and his suppliers, appellant never used anything other than his

real name and address; appellant's business telephone is a working number which has been in existence for several years, and he has been in the business of producing brochures for home builders for almost eleven years. During this period appellant has produced approximately 1000 sets of brochures similar to those requested by Mr. Leveto. There was no evidence that in any of these prior transactions appellant had ever attempted to deceive his clients. And, most importantly, in early November, 1973, appellant went to the expense of having the type set for the Leveto brochures.

With respect to appellant's contention that Mr. Leveto breached their contract, it is undeniable that appellant secured a credit memo from Glidden Paint Company which was never paid. Appellant testified that Mr. Leveto refused to honor this credit memo even though Glidden had been included among the suppliers listed by Mr. Leveto. Appellant further testified that on or about August 21, 1973, he telephoned Mr. Leveto and informed him that the brochures would not be produced until the Glidden credit memo was paid. Mr. Leveto, on the other hand, testified he had no knowledge of a credit memo from Glidden, and that he never heard from the appellant after August 7, 1973. And, although it was within the province of the trial court to resolve the issue of credibility in favor of Mr. Leveto, the neutral testimony of the district manager of Glidden, Mr. Mears, who signed the memo, makes it clear that there was a definite controversy as to who would be charged for the Glidden advertisement.

Finally, there was no evidence that the appellant attempted to abscond with any money secured from the Leveto contract. Nor was there any evidence that appellant used the Leveto funds for any purpose other than producing the brochures. I find it difficult to believe that appellant would jeopardize his career and reputation by attempting to defraud one builder out of the hundreds he has done business with.

Although appellant was obviously guilty of poor judgment in neglecting to punctually fulfill the terms of his contract because of his belief that Mr. Leveto had breached the contract, I do not believe his conduct amounted to a criminal offense. This controversy is simply a contractual dispute between two experienced businessmen which is best resolved in a civil forum.

The judgment of sentence should be reversed.

HOFFMAN and SPAETH, JJ., join in this dissenting opinion.