390 A.2d 784

COMMONWEALTH of Pennsylvania

v.

Maynard Joseph PATTERSON, Appellant.

Superior Court of Pennsylvania.

Submitted Dec. 14, 1977.

Decided July 12, 1978.

Leon H. Kline, Philadelphia, for appellant.

William S. Kieser, District Attorney, Williamsport, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

210

SPAETH, Judge:

This is an appeal from judgments of sentence entered on jury verdicts of guilty on five counts.[1] The counts arose from three incidents, which we shall discuss separately.

## I. Counts 1 and 4

On these counts appellant was convicted of hindering apprehension or prosecution, The Crimes Code, Act of Dec. 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S.A. 5105(a)(5), and theft by deception, *id.,* 18 Pa.C.S.A. § 3922(a)(3).

Appellant was an officer of the Williamsport Police Department; in August, 1973, he was captain of uniformed patrol; in February, 1974, he was inspector; in April, 1974, he became acting chief of police; and in May, 1974, he became chief of police.

On August 30 or 31, 1973, appellant asked Sergeant Charles Croft to give him a key to a room in which equipment of the Narcotics Unit was stored; the room was under tight security, and Croft had one of only three keys to it. As his reason for needing the key, appellant told Croft he wanted to leave an important message in the room. Croft gave appellant the key. Appellant entered the room and removed a surveillance kit,[2] which he took home.

On the evening of September 4, while appellant still had the kit, two State Police officers interviewed appellant at his home. Their purpose was evidently to inquire about illegal wiretapping at City Hall. (Shortly after the officers interviewed appellant, the Mayor of Williamsport, John R. Coder, was charged with illegal wiretapping and other criminal offenses.) In any case, the officers were not looking for the surveillance kit and did not know it was missing. Appellant

1. Appellant was indicted on nine counts. One was dismissed prior to trial; appellant's demurrer was sustained as to two, and the jury reached no verdict as to one, which the Commonwealth said it would not re-prosecute.

2. The kit, packed in an attache case, consisted of a "tie tack" microphone, a transmitter, and a receiver.

told the officers that he knew of no illegal wiretapping, and knew of no surveillance devices except for a kit used by the Narcotics Unit, which, he said, was in the custody of James Rechel, custodian of police equipment.

The next day appellant returned the kit. Later that day, when questioned by the Chief of Police, he acknowledged having had the kit.

At the trial, the Commonwealth, over appellant's objection, introduced the testimony of an assistant district attorney, who said that he had attended an indicting grand jury before which appellant testified,[3] that he had taken notes of the proceedings, and that appellant had testified at that time that while he had had the surveillance kit, he had used it in agreement with Mayor Coder's attorney, one Williamson, to eavesdrop on, and to tape record, interviews that Williamson had with various police officers.

■ The Commonwealth argues that appellant's statements to the two State Police officers at his home on September 4 made him guilty of hindering apprehension or prosecution under § 5105(a)(5), which reads:

(a) *Offense defined.*—A person commits an offense if, with intent to hinder the apprehension, prosecution, conviction or punishment of another for crime, he:

*　*　*　*　*　*

(5) volunteers false information to a law enforcement officer.

Appellant replies that even if the evidence was sufficient to show that he "volunteer[ed]" information, the evidence was insufficient to support a conviction because there was no proof that he was "hinder[ing] the apprehension, prosecution, conviction or punishment *of another for crime*" (emphasis added).

---

**3.** This was the grand jury that ultimately returned the indictment of Mayor Coder for illegal wiretapping and other criminal offenses, as mentioned *supra.*

212

■ For purposes of decision we may assume, as the Commonwealth argues, that appellant's false statement[4] about the location of the surveillance kit was intended to protect both appellant and Williamson in their eavesdropping venture.[5] Even so regarded, appellant's conduct could not represent an attempt to hinder the apprehension and prosecution of another for crime, for the only surveillance activities then unlawful, that is, in August, 1973, were activities that breached the privacy of telephone or telegraph communications. The Crimes Code, *supra*, 18 Pa.C. S.A. § 5702. The prohibition against eavesdropping of the sort appellant and Williamson undertook was not made criminal until 1974. The Crimes Code, *supra*, § 5705, as amended, Act of 1974, December 27, P.L. 1007, § 4, 18 Pa.C.S.A. § 5705. Since Williamson could not be apprehended and prosecuted for eavesdropping, appellant may not be convicted of hindering his apprehension or prosecution.

■ As to the verdict of guilty of theft by deception, 18 Pa.C.S.A. § 3922(a)(3), appellant argues that the evidence was insufficient because his deception, in telling the sergeant that he wanted the key so that he could leave a message in the room, was not related to an assertion of a property interest in the surveillance kit.

The Crimes Code provides:

§ 3922. Theft by deception.

(a) *Offense defined.*—A person is guilty of theft if he intentionally obtains or withholds property of another by deception. A person deceives if he intentionally:

\*　　\*　　\*　　\*　　\*　　\*

4. Appellant also argues that there was insufficient proof that he made a false statement, but we need not consider this argument.

5. In deciding the sufficiency of the evidence, we must first accept as true all the evidence upon which the trier of fact could properly have based the verdict, and then ask whether that evidence, with all reasonable inferences from it, was sufficient to prove guilt beyond a reasonable doubt. *Commonwealth v. Fortune,* 456 Pa. 365, 318 A.2d 327 (1974); *Commonwealth v. Petrisko,* 442 Pa. 575, 275 A.2d 46 (1971).

(3) fails to correct a false impression which the deceiver previously created or reinforced, or which the deceiver knows to be influencing another to whom he stands in a fiduciary or confidential relationship.

In *Commonwealth v. Gallo*, 236 Pa.Super. 557, 345 A.2d 747 (1975), this court considered § 3922 as applied to a defendant who arranged to print up brochures for a building contractor, and collected money supposedly to pay for advertising in the brochures, but then kept the money and did not print the brochures. In holding § 3922 applicable, a majority (Judges HOFFMAN, CERCONE and SPAETH dissented) of the court said:

The offense of theft by deception is an enlargement of the earlier statutory crime of obtaining money by false pretenses. Under former law (which also included the crimes of larceny by trick and fraudulent conversion), it was virtually impossible to successfully impose criminal sanctions upon persons operating as appellant operated in the case before us.[1] The offense of theft by deception was created in large part to criminalize the practice of taking people's money with a facade of good intentions and the actual intent never to perform the promised services. Schemes such as appellant's have made suckers of thousands, and have seriously marred the image of legitimate businessmen and women. The instant case is an example of a type of business operation which the offense of theft by deception was designed to attack—the situation where the actor creates the false impression that he holds an important position with a large organization and that he has a plan for providing valuable services at little or no cost; where the actor and his valuable services become unavailable after the money has been collected; where, upon confrontation with criminal prosecution, the actor makes a belated effort to pretend compliance, or falsely accuses the victim of some infraction of the agreement. The conduct of appellant in this case clearly comes under the offense of theft by deception.

[1] The law books are so full of examples of the reasons why charges of Obtaining Money by False Pretenses, Larceny by Trick and Fraudulent Conversion were ineffective in many instances of actual

The Supreme Court granted allocatur and reversed, *Commonwealth v. Gallo*, 473 Pa. 186, 373 A.2d 1109 (1977), but on the limited basis that the appellant's failure to perform, by itself, did not establish the requisite intent to deceive. The Court did not disapprove this court's description of the nature of the offense. Here, it is apparent that appellant's deception regarding his reasons for wanting the key was not the sort of deception described in this court's opinion.

Other considerations support this conclusion. One is guilty under § 3922 only "if he intentionally obtains or withholds property of another by deception." § 3901 defines "obtain" to mean:

> To bring about a transfer or purported transfer of legal interest in property, whether to the obtainer or another
>
> . . . .

Appellant's lie about wanting to put a message in the equipment room resulted in the door to the room being opened; it did not bring about a transfer or purported transfer of legal interest in the surveillance kit.[6] *And see* the Reporter's Comment to the Crimes Code, which speaks of a deception "effective to cause the victim to part with property . . . ." Toll, *Pennsylvania Crimes Code Annotated*, 429 (1974).

■■ Although the Crimes Code contains no definition of "withholding" property, it is clear that § 3922 requires a causal connection between the deception and the withholding similar to that between the deception and the obtaining; that is, the deception must cause the victim to acquiesce in the deceiver's continued possession of the property. Appel-

business fraud, that a discussion of them is undesirable. Suffice it to say, the deficiencies, centered around the difficulty in proving the false representation of an existing fact in a false pretense charge, the existence of an intention to steal at the time the money or property was handed over in larceny by trick, and the proof that title to money or property had not passed in fraudulent conversion. 236 Pa.Super. at 563–64, 345 A.2d at 751.

6. It would appear that § 3921, Theft by Unlawful Taking, was the appropriate charge for appellant's offense, assuming there was evidence that he had "intent to deprive" the city of the kit, as defined in § 3901.

lant's deception regarding his reason for wanting the key did not have this effect. Nor did appellant's deception of the two State Police officers regarding the location of the surveillance kit; since the officers did not know appellant had the kit, and were not looking for it, appellant's deception could not cause them to acquiesce in his continued possession of the kit.[7]

## II.   Counts 2 and 8

On these counts appellant was convicted of hindering apprehension or prosecution, 18 Pa.C.S.A. § 5105(a)(3),[8] and tampering with a witness, 18 Pa.C.S.A. § 4907(a)(1) and (2).[9]

7.  In its brief the Commonwealth says: "What Patterson really argues is that if by a nefarious ploy D obtains the key to a safety deposit box from X, an aged widow, and thereby takes possession of a ruby worth $1000,000 [*sic*] from the box, D did not obtain the ruby by deception and thus cannot be guilty of theft by deception." Brief for appellee at 22. This example, its emotional appeal aside, omits the factor that distinguishes theft by deception. How, we must ask, did D get possession of the key? If he stole it from X, or said he was taking it in order to make a duplicate for X's use, and them proceeded to steal the ruby from the box, the act would constitute theft by unlawful taking. If, however, D told X he wanted to appraise the ruby, or to clean it, and she gave him the key so that he could take possession of the ruby, and D sold the ruby and kept the proceeds, then the deception by which D obtained the key would be related to "bring[ing] about a transfer or purported transfer of legal interest in property"—the interest of a bailee—and theft by deception would be an appropriate charge.

8.  § 5105.  Hindering apprehension or prosecution
(a) *Offense defined.*—A person commits an offense if, with intent to hinder the apprehension, prosecution, conviction or punishment of another for crime, he:

\*        \*        \*        \*        \*        \*

(3) conceals or destroys evidence of the crime, or tampers with a witness, informant, document or other source of information, regardless of its admissibility in evidence;

9.  4907.  Tampering with witnesses and informants
(a) *Offense defined.*—A person commits an offense if, believing that an official proceeding or investigation is pending or about to be instituted, he attempts to induce or otherwise cause a witness or informant to:
(1) testify or inform falsely;
(2) withhold any testimony, information, document or thing except on advice of counsel;

In February, 1974, Charles Croft—the same man who gave appellant the key to the equipment room—was promoted from lieutenant in the Williamsport Police Department to acting captain, in which position he performed the duties of captain but received only lieutenant's pay. After appellant became chief of police, in April, 1974, Croft asked appellant to promote him to captain. This request was repeated once or twice, the last time being in late July or early August, 1974. Shortly thereafter, appellant told Croft he would receive the salary of captain but would remain an acting captain. On August 23 or 24, 1974, Croft testified as a witness in Mayor Coder's trial. The Commonwealth's contention is that appellant gave Croft the raise to ensure that he would testify favorably for the mayor.

Appellant argues that this circumstantial evidence was insufficient to sustain a conviction. The Commonwealth may prove its case by circumstantial evidence, but the pieces of evidence must fit together so tightly as to establish guilt beyond a reasonable doubt. *Commonwealth v. Treftz*, 465 Pa. 614, 351 A.2d 265 (1976), *cert. denied*, 426 U.S. 940, 96 S.Ct. 2658, 49 L.Ed.2d 392; *Commonwealth v. Cox*, 460 Pa. 566, 333 A.2d 917 (1975); *Commonwealth v. Bailey*, 250 Pa.Super. 402, 378 A.2d 998 (1977). We agree with appellant that the evidence here did not meet this test.

The Commonwealth argues that there was evidence that Croft was well qualified to be promoted, and that the reasons appellant gave for not promoting Croft were bad faith excuses. It is not clear how evidence of a bad faith *refusal* of a raise pertains to a charge of a bad faith *granting* of a raise; but in any case, such evidence is consistent with evidence of animosity between the two men; Croft testified that he did not like appellant, and a reasonable explanation for the delay of the raise would seem to be that appellant did not like Croft.

The fact that Croft himself perceived the raise, when it was given, as intended to ensure his favorable testimony

was not sufficient to prove appellant's intent. Croft admitted that appellant never indicated to him that the raise was related to his testimony, or in fact even discussed his testimony. (Appellant testified that he only gave Croft the raise after Croft had spoken to Mayor Coder about it, and Mayor Coder ordered him to give Croft the raise, which suggests Croft should have realized that a more likely explanation of the timing of the raise was that he himself had precipitated it.)[10]

After Mayor Coder's trial, Croft and appellant became openly hostile, and Croft was abruptly demoted. This may indicate that appellant was vindictive or unfair, but without other evidence, it was insufficient to prove an intention to influence Croft's testimony before trial; it may create a suspicion, but a conviction must be based on more than suspicion. *Commonwealth v. Roscioli*, 454 Pa. 59, 309 A.2d 396 (1973); *Commonwealth v. Wilson*, 225 Pa.Super. 513, 312 A.2d 430 (1973).

### III.   Count 7

On this count appellant was convicted of tampering with public records or information, 18 Pa.C.S.A. § 4911(a)(1) and (3).[11]

On March 29, 1974, Sergeant Augustus Wilson arrested a youth, Russell Shaffer, for cutting the electrical cord of a

10. One is left to wonder whether if appellant had *not* given Croft the raise, Croft might equally have suspected that appellant was holding out the possibility of a post-trial raise as "bait" for favorable testimony at trial.

11. § 4911. Tampering with public records or information
   (a) Offense defined.—A person commits an offense if he:
   (1) knowingly makes a false entry in, or false alteration of, any record, document or thing belonging to, or received or kept by, the government for information or record, or required by law to be kept by others for information of the government;
   *   *   *   *   *   *
   (3) intentionally and unlawfully destroys, conceals, removes or otherwise impairs the verity or availability of any such record, document or thing.

soft drink machine. Shaffer worked part time at a local bank, and shortly after his arrest one Garson of the bank called Sergeant Wilson and tried to persuade him to drop the charges against Shaffer (malicious mischief). Wilson refused; Garson argued, and said, "You have kids, don't you?" Wilson interpreted this as a threat against his children, and wrote a memorandum about the incident on Form WP 18, which he turned over to his supervisor with the Shaffer case number written on it. On the day of the preliminary hearing, Wilson could not find the WP 18 in the Shaffer file. It turned out that appellant had been given it but could not find it, although by the time appellant took the stand at his trial he was able to produce it (he testified that his office had been moved twice, and that in the process he had found it).

Viewing the evidence in the light most favorable to the Commonwealth, *see* footnote, 5, *supra*, we shall assume that as an intra-office communication, a WP 18 would normally be kept (there was conflicting testimony on whether it would be); and for purposes of decision we shall assume that as a matter of law it was the kind of public record covered by the statute. Even so, the evidence that appellant intentionally concealed the WP 18 was speculative at best; it showed no more than that Garson was a friend of appellant's, and that appellant ultimately did find the WP 18. Circumstantial evidence so incomplete, *see* Part II *supra*, does not establish guilt beyond a reasonable doubt.

Judgments of sentence reversed, and appellant discharged.

VAN der VOORT, J., concurs in the result.

JACOBS, President Judge, dissents and would grant a new trial on all charges.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.