527 A.2d 113

COMMONWEALTH of Pennsylvania

v.

Steven W. BRACHBILL, Appellant.

COMMONWEALTH of Pennsylvania

v.

Darrell R. MUSSER, Appellant.

Superior Court of Pennsylvania.

Argued Feb. 19, 1987.

Filed June 4, 1987.

Petition for Allowance of Appeal Granted Oct. 27, 1987.

616

Joseph M. Devecka, State College, for appellants.

Ross H. Cooper, Assistant District Attorney, Bellefont, for Com.

Before WIEAND, OLSZEWSKI and TAMILIA, JJ.

OLSZEWSKI, Judge:

These are consolidated appeals from judgments of sentence. After a jury trial appellant Darrell Musser was convicted of intimidation of witness or victim, 18 Pa.Cons. Stat.Ann.Sec. 4952. Both Musser and appellant Steven Brachbill were convicted of criminal conspiracy, 18 Pa.Cons. Stat.Ann.Sec. 903. Appellants now raise numerous issues which will be discussed seriatim. Finding no error, we affirm.

Musser and Brachbill were employed as correction officers at the Centre County Prison. The victim, Robert L. Riggleman, was incarcerated at the prison and served as a prison trustee. Riggleman had befriended the correction

officers as evidenced by testimony that they often engaged in "horseplay."

Four days prior to Riggleman's release, several incidents occurred at the prison which form the basis of the Commonwealth's case.[1]  In summary, appellants, at various times: restrained Riggleman while rubbing Ben Gay ointment onto his genitals;  handcuffed and shackled Riggleman, placed a bag over his head, and wrote over his face and body with a marker pen;  marked a barber pole stripe on his penis and wrote on his buttocks;  shaved a patch of Riggleman's hair near his genitals;  forcibly administered an unprescribed enema;  and closely shaved his head.

After his release from prison, Riggleman reported these incidents to the Pennsylvania State Police and an investigation was commenced.  Subsequently, appellants contacted Riggleman by telephone.  During the conversation Riggleman lied and advised appellants that he had not contacted the police.  Appellants told Riggleman to remain silent and to "report" to them every day or every other day.  (R.R. 121a.)  Thereafter, appellants telephoned Riggleman "quite a few times."  (R.R. 122a.)  On August 23, 1984, Riggleman contacted Corporal Hoffmaster of the State Police and that evening Riggleman returned appellants' call from police barracks.  Corporal Hoffmaster overheard that conversation by listening on an extension telephone.

The next day Riggleman unexpectedly saw Musser at a yard sale.  Musser expressed fear of losing his job because of what had happened at the prison.  Musser offered to purchase clothing for Riggleman and his family and to take the latter out for dinner.  Before parting, Musser gave Riggleman seven dollars "for the phone calls."  (R.R. 127a.)

1.  The trial court examined in detail the incidents at the prison giving rise to numerous charges against appellants.  Appellants were acquitted, however, of those charges.  We think it is necessary to review only the facts pertinent to the convictions at issue in this appeal.

## I.

Appellants first contend the court erred in instructing the jury on the charge of intimidating a witness or victim,[2] 18 Pa.Cons.Stat.Ann.Sec. 4952. That section provides:

**Sec. 4952. Intimidation of witnesses or victims**

(a) **Offense defined.**—A person commits an offense if, with the intent to or with the knowledge that his conduct will obstruct, impede, impair, prevent or interfere with the administration of criminal justice, he intimidates or attempts to intimidate any witness or victim to:

(1) Refrain from informing or reporting to any law enforcement officer, prosecuting official or judge concerning any information, document or thing relating to the commission of a crime.

(2) Give any false or misleading information or testimony relating to the commission of any crime to any law enforcement officer, prosecuting official or judge.

(3) Withhold any testimony, information, document or thing relating to the commission of a crime from any law enforcement officer, prosecuting official or judge.

(4) Give any false or misleading information or testimony or refrain from giving any testimony, information, document or thing, relating to the commission of a crime, to an attorney representing a criminal defendant.

(5) Elude, evade or ignore any request to appear or legal process summoning him to appear to testify or supply evidence.

(6) Absent himself from any proceeding or investigation to which he has been legally summoned.

(b) **Grading.**—The offense is a felony of the third degree if:

(1) The actor employs force, violence or deception, or threatens to employ force or violence, upon the witness or victim or, with the requisite intent or knowledge, to any other person.

---

**2.** Appellants' claim was adequately preserved at trial and was raised in post-verdict motions.

(2) The actor offers any pecuniary or other benefit to the witness or victim or, with the requisite intent or knowledge, to any other person.

(3) The actor's conduct is in furtherance of a conspiracy to intimidate a witness or victim.

(4) The actor solicits another to or accepts or agrees to accept any pecuniary or other benefit to intimidate a witness or victim.

(5) The actor has suffered any prior conviction for any violation of this title or any predecessor law hereto, or has been convicted, under any Federal statute or statute of any other state, of an act which would be a violation of this title if committed in this State.

Otherwise the offense is a misdemeanor of the second degree. 1980, Dec. 4, P.L. 1097, No. 187, Sec. 4, effective in 60 days.

18 Pa.Cons.Stat.Ann.Sec. 4952.

In instructing the jury as to the offense of intimidation, the court noted the necessary elements and then stated:

The common and everyday definition of intimidation is to compel or deter by use of threats. However, one person can be guilty of committing the crime of intimidation without actually threatening the victim. So while your common everyday knowledge of what intimidation means may include that someone has to be threatened, it is not true for the crime to be made out beyond a reasonable doubt that you must find that there was an actual threat to use force.

(R.R. 213a–214a). Appellants contend the jury should have been instructed that intimidation means to compel or deter conduct by threat. Specifically, appellant claims that a necessary element of the offense of intimidation is the presence of a threat by a defendant and that the jury should have been so charged. We do not agree for several reasons.

First, the statute's basic purpose suggests that it was designed to punish any knowing or intentional conduct designed to obstruct justice. The word "threat" is found

nowhere in the definition of the offense, 18 Pa.Cons.Stat. Ann.Sec. 4952(a). Quite rightly, the legislature intended that the statute was to be read broadly so as to include conduct likely to cause public harm.

Second, our interpretation conforms to the statutory directives of Section 4952. Under subsection (b), the offense of intimidation is graded as a misdemeanor unless one of five different circumstances are present. In particular, subsection (b)(1) provides that where the defendant uses "force, violence or deception, or *threatens* to employ force or violence," the offense is elevated to a felony. 18 Pa. Cons.Stat.Ann.Sec. 4952(b)(1). In our view, the legislature intended to punish *any* intimidating behavior, whether or not a threat forms the basis of that behavior. Where, however, the intimidating behavior is by threat of force or violence, the punishment is more severe.

Third, the dictionary definition of "intimidate" is not restricted by the word "threat." In general, intimidation is any "(u)nlawful coercion; extortion; duress (or) putting in fear." Black's Law Dictionary, 5th ed. at 737 (1979). Webster's Ninth New Collegiate Dictionary at 634 (1984) defines "intimidate" as "to compel or deter by *or as if* by threat." (emphasis added). Certainly, the use of a threat is, quite frequently, the common means of intimidation. Still, the legal and common definitions of intimidation invoke a notion of conduct which is directed toward affecting future behavior whether or not a threat is part of that conduct.

Fourth, our decision has some basis in case law. In *Commonwealth v. Fontana*, 490 Pa. 7, 415 A.2d 4 (1980), the defendant made no actual threat to the witness in attempting to deter the latter from testifying. Nevertheless, the Supreme Court upheld the conviction for tampering.[3] Obviously, proof of an actual threat was not a prereq-

---

**3.** *Fontana* was decided under the predecessor statute to Section 4952 which provided:

(a) Offense defined.—A person commits an offense if, believing than an official proceeding or investigation is pending or about to be instituted, he attempts to induce or otherwise cause a witness or informant to;

uisite to a conviction. We believe the same rule holds true here.

■ In sum, our interpretation seems better to carry out the legislature's intent in enacting this statute without unduly restricting its application. At the same time, that interpretation is consistent with dictionary definitions of intimidation which we accept as the legal and common usage, and with case law. For these reasons, we conclude that the definition of initimidation found in Section 4952(a) does not contain an element of threatening conduct. Having determined that a threat is not an element of the offense of intimidation, the court was not required to so instruct the jury.

## II.

Appellant Musser also claims that the evidence was insufficient to support a conviction for the offense of intimidation of a witness or victim. In this regard, Musser contends there was no evidence of a threat made to the victim. Having already determined that proof of a threat is not a necessary element of the charge of intimidation, *supra*, Part I, we reject appellant's claim.

## III.

In the third issue, appellant Musser offers another argument in support of his claim that the evidence was insuffi-

> (1) testify or inform falsely;
> (2) withhold any testimony, information, document or thing except on advice of counsel;
> (3) elude legal process summoning him to testify or supply evidence; and
> (4) absent himself from any proceeding or investigation to which he has been legally summoned.
> (b) Grading.—The offense is a felony of the third degree; if the actor employs force, deception, threat or offer of pecuniary benefit. Otherwise it is a misdemeanor of the second degree.
> 18 Pa.Cons.Stat.Ann.Sec. 4907, *repealed by,* 18 Pa.Cons.Stat.Ann.Sec. 4952. In our view, threatening conduct is not an element under either provision; it is simply too tenuous to presume the legislature intended to make such a substantial change merely by changing the operative word from "induce" to "intimidate."

cient to support a conviction for the offense of intimidation. Appellant starts with the premise that the offense of intimidation requires conduct by the defendant which deters the victim from taking action. In this case, Riggleman misrepresented to Musser that the authorities would not be informed. Musser argues that because he believed Riggleman's lies (Riggleman had already contacted the police), he could not have had the requisite intent to deter Riggleman from informing the authorities. Although appellant's initial premise is correct, he reaches an incorrect conclusion. According to his argument, the inquiry is into his subjective state of mind; if Musser did not believe that Riggleman had decided to talk to the police, no intimidation could take place. Appellant's theory has no support in the law.

In order to convict the defendant of intimidation, the evidence must have shown beyond reasonable doubt that the defendant: (1) intimidated or attempted to intimidate the victim into refraining, informing or reporting information regarding a crime, to the authorities and, (2) that the defendant did so with the intent or knowledge that the conduct would obstruct, impede, impair, interfere or prevent the administration of criminal justice. 18 Pa.Cons.Stat.Ann. Sec. 4952(a). There is no requirement in Section 4952 that the defendant believe he was deterring the victim's free will. Rather, Section 4952 requires proof that the defendant intended to intimidate the victim. That is, the proof must show that the defendant acted or engaged in conduct: (1) with the "conscious object to engage in conduct of that nature or to cause such a result," 18 Pa.Cons.Stat.Ann.Sec. 302(b)(1); or (2) with the awareness "that it is practically certain that the conduct will cause such a result," 18 Pa.Cons.Stat.Ann.Sec. 302(b)(2). The focus of the inquiry is upon the conduct and statements of the defendant; most often, it is only through the defendant's acts and statements and the reasonable inferences therefrom, that guilt may be confirmed.

Nor are we persuaded by appellant's reliance on a prior decision by this Court in which the relevance of appellant's intent was at issue. In *Commonwealth v. Patterson*, 257

Pa.Super. 206, 390 A.2d 784 (1978), the Commonwealth argued that the defendant had given a promotion and raise to a witness in order to secure favorable testimony in a subsequent trial. In concluding that the evidence was insufficient to support a charge of intent to influence a witness, the Court stated:

> The fact that ... (the witness) himself perceived the raise, when it was given, as intended to insure his favorable testimony was not sufficient to prove appellant's intent.

*Id.*, 257 Pa.Super. at 216–217, 390 A.2d 790. *Patterson* is not at odds with our discussion today. In that case the only evidence in support of the Commonwealth's case was the fact that the witness had been given a raise prior to trial; although other explanations justifying the raise were equally plausible, the only proffered explanation was the witness's own statement. *Id.*, 257 Pa.Super. at 216, 390 A.2d at 790. In the segment cited by appellant, the Court was emphasizing the lack of objective evidence tending to prove the defendant's intent. Such is not the case here. Appellant's claim that he did not intend to deter Riggleman from any course of action rings hollow given that Musser repeatedly contacted the victim once he began to feel the pressure of an investigation. Appellant gave Riggleman money to pay for the telephone calls and offered to get him clothing and to take his family out to dinner. During the first phone call, Riggleman was told to make a near daily report on his activities. When Musser approached Riggleman at the yard sale he told the latter to "keep it the way we've been keeping it." (R.R. 126a.) From the testimony regarding appellant's statements and conduct, the jury could have reasonably inferred that appellant intended or knew that his conduct would "obstruct, impede, impair, prevent or interfere with the administation of criminal justice." 18 Pa.Cons.Stat.Ann.Sec. 4952(a).

## IV.

In the next issue, both defendants claim a new trial must be granted because the court erred in instructing the jury

to consider "whether the defendant or defendants, either or both of them, offered any pecuniary, monetary, financial or other benefit to Mr. Riggleman." (R.R. 215a). The challenged instruction was virtually a verbatim recitation of one of the special enhancement factors of Section 4952(b) which elevates the grading of intimidation from a misdemeanor to a felony. Appellants argue that the issuance of the charge was error because there was no evidence a pecuniary benefit was offered to Riggleman in order to intimidate him.[4] We disagree.

■ Implicit in appellant's argument is a challenge to the propriety of issuing an instruction based upon the evidence presented. The duty of the trial court is to "frame the legal issues for the jury and instruct the jury on the applicable law." *Commonwealth v. Leonhard,* 336 Pa.Super. 90, 95, 485 A.2d 444, 446 (1984). *See generally Commonwealth v. Ford-Bey,* 504 Pa. 284, 472 A.2d 1062, 1064–1065 (1984). The court's determination of the applicable law depends, in part, on the circumstances of the case, the facts in evidence and the line of argument pursued by counsel in addressing the jury. After reviewing the record, we are satisfied the charge was relevant and correctly stated the applicable law.

Further, we are satisfied that there was no error in instructing the jury to consider whether appellants offered Riggleman any *pecuniary* benefit. Again, this was an accurate restatement of the special enhancement provision, 18 Pa.Cons.Stat.Ann.Sec. 4952(b)(2). Moreover, our review of the record indicates that the trial court instructed the jury to consider "any pecuniary, monetary, financial *or other benefit* " which may have been offered. (R.R. 215a) (Emphasis added.) This, too, accurately reflects the enhancement provision. The statute does not require proof that only a pecuniary benefit was offered; the offer of any other benefit may suffice. Given Riggleman's testimony regarding appellants' offer of money to pay for the phone calls, the offer to obtain clothing and the offer to take

---

4. Appellants' issue was raised at trial and adequately preserved in a post-verdict motion for a new trial.

Riggleman's family out to dinner, the jury was properly instructed on the grading enhancement provision.

## V.

Appellants next contend there was insufficient evidence to convict them of criminal conspiracy to intimidate. Specifically, appellants claim the jury must have found that Musser's intimidating conduct formed the basis of the conviction for intimidation. Arguing that the evidence was insufficient to support the intimidation conviction, appellants contend the evidence was also insufficient to support the conviction of conspiracy. Consequently, appellants maintain that the judgments of sentence for conspiracy must be arrested or, alternatively, that the conspiracy counts must be reduced to a misdemeanor or a new trial order.[5]

Because we have already concluded that the evidence was sufficient to support the intimidation conviction, *supra*, Part III, the basis of appellant's argument is undermined and we need proceed no further. Nonetheless, because appellants generally challenge the sufficiency of the evidence supporting the conspiracy convictions, we are compelled to review that evidence.

■ A conviction of criminal conspiracy does not merge into the offense which was the object of the conspiracy. *Commonwealth v. Miller*, 469 Pa. 24, 364 A.2d 886 (1976). A conviction of conspiracy may stand provided the evidence

---

5. In order to appreciate the significance of appellants' argument, it is necessary to examine the jury verdicts. Musser was found guilty of intimidation, a felony of the third degree given that the jury returned special verdicts of guilty on two special enhancement factors: the offer of a pecuniary or other benefit, 18 Pa.Cons.Stat.Ann.Sec. 4952(b)(2); and, the conduct was in furtherance of a conspiracy, 18 Pa.Cons.Stat.Sec. 4952(b)(3). Both Musser and Brachbill were found guilty of criminal conspiracy, a felony of the third degree. The jury was not instructed on the vicarious liability of a co-conspirator for crimes committed as the result of a conspiracy. Because both were convicted of conspiracy, a felony, and because the only felony charge brought against them was intimidation, appellants argue that if the evidence was insufficient to support the verdict on the intimidation charge, the conviction for conspiracy to intimidate must also fall.

shows beyond doubt that appellants: (1) entered an agreement to do an unlawful act, (2) with a shared criminal intent and (3) an overt act was done in furtherance of the conspiracy. 18 Pa.Cons.Stat.Ann.Sec. 903. An agreement may be inferred from the acts and circumstances of the parties. *Commonwealth v. Dumas*, 299 Pa.Super. 335, 343, 445 A.2d 782, 786 (1982).

■ With these legal principles in mind and upon a review of the record in a light favorable to the Commonwealth, the evidence was sufficient to support the convictions for conspiracy to intimidate. In part, the evidence showed that shortly after Riggleman's release from prison and after having contacted the police, appellants made repeated telephone calls to him requesting that he report frequently to them and telling him to "give us a call," and "we would like to see you." (R.R. 41a–42a, 121a.) Appellants told Riggleman to make collect phone calls to them. (R.R. 125a.) In speaking with Riggleman, Brachbill stated, "You know we did it. We know we did it. Let's keep it that way." (R.R. 124a.) From these statements, and from the other statements and acts of appellants, the jury could have inferred that both appellants had entered into an agreement to prevent Riggleman from cooperating in the police investigation.

## VI.

Finally, appellants argue that a new trial must be granted because the trial court improperly admitted into evidence the testimony of Corporal Jan Hoffmaster, the state police officer who monitored a telephone conversation between Riggleman and Brachbill.

On August 23, 1984, Brachbill telephoned the home of Riggleman's parents, seeking to speak with Riggleman, who was not there at that time. Later that same day Riggleman learned of the telephone call. He notified Corporal Hoffmaster of the Pennsylvania State Police who suggested that Riggleman return Brachbill's call from the state police barracks. Riggleman agreed and when he

returned the call, Corporal Hoffmaster listened to the conversation on a telephone extension. Hoffmaster testified as to the conversation between Riggleman and Brachbill. Appellants maintain that the testimony should have been suppressed as a violation of the Wiretapping and Electronic Surveillance Control Act, 18 Pa.Cons.Stat.Ann.Sec. 5703(1)–(3) and Sec. 5704(2)(ii) (the "Act").

Section 5703 of the Act is a broad and general prohibition against the interception, disclosure and use of wire or oral communications:

**Sec. 5703. Interception, disclosure or use of wire or oral communications**

Except as otherwise provided in this chapter, a person is guilty of a felony of the third degree if he:

(1) willfully intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept any wire or oral communication;

(2) willfully discloses or endeavors to disclose to any other person the contents of any wire or oral communication, or evidence derived therefrom, knowing or having reason to know that the information was obtained through the interception of a wire or oral communication; or

(3) willfully uses or endeavors to use the contents of any wire or oral communications, or evidence derived therefrom, knowing or having reason to know, that the information was obtained through the interception of a wire or oral communication.

18 Pa.Cons.Stat.Ann.Sec. 5703. Section 5702 defines the operative words of Section 5703 as follows:

**"Intercept."** Aural acquisition of the contents of any wire or oral communication through the use of any electronic, mechanical or other device.

**"Oral communication."** Any oral communications uttered by a person possessing an expectation that such communication is not subject to interception under circumstances justifying such expectation.

**"Wire communications."** Any communication made in whole or in part through the use of facilities for the transmission of communications by wire, cable or other like connection between the point of origin and the point of reception furnished or operated by a telephone, telegraph or radio company for hire as a communication common carrier.

18 Pa.Cons.Stat.Ann.Sec. 5702.

■ In view of these definitions and the mandate of Section 5703, it would appear that the act of eavesdropping on an extension telephone is violative of Section 5703. A panel of this Court has, however, decided otherwise. In *Commonwealth v. Hammond,* 308 Pa.Super. 139, 454 A.2d 60 (1982), the victim's sister testified as to a telephone conversation between the victim and the defendant. The witness listened to the conversation on a telephone extension without the consent of the defendant or the victim. *Id.,* 308 Pa.Super. at 142–143, 454 A.2d at 61. In upholding the admissibility of the witness's testimony the Court stated:

At 18 Pa.C.S.A.Sec. 5702, an intercepting device is defined as

"(a)ny device or apparatus ... that can be used to intercept a wire or oral communication other than:

(1) *any telephone* or telegraph *instrument,* equipment or facility, or any component thereof, *furnished to the subscriber* or user by a communication common carrier in the ordinary course of its business, or *purchased by any person,* and being used by the subscriber, user, or person in the ordinary course of its business ..." (Emphasis added)

This definition makes it clear that *a telephone extension is not to be categorized as an intercepting device.*

If a telephone is not an intercepting device under the present Act, it then follows that the use of the instrument in the manner employed by (the witness) does not consititute an interception.

*Id.,* 308 Pa.Super. at 144, 454 A.2d at 62 (emphasis added). Under the rule and logic of *Hammond,* the use of the telephone extension by Corporal Hoffmaster was not an "interception" in violation of the Act. Quite predictably, appellants ask us to overrule *Hammond.* This we cannot do as a panel of this Court cannot overrule a prior panel decision.

We are troubled, however, by the fact that this case, unlike *Hammond,* involves the use of a telephone extension by a police officer, albeit with the consent of one party, the victim. Surely, the "telephone extension" exception was not meant to be a loophole in the protections afforded by the Act, Section 5703.[6] Nevertheless we are constrained to follow the provisions of our wiretap act and the decision in *Hammond.*

Appellants argue, however, that the conversation was heard contrary to the Act and draw our attention to Section 5704 which provides in part:

**Sec. 5704. Exceptions to prohibition on interception and disclosure of communications**

.  .  .  .  .

(2) Any investigative or law enforcement officer or any person acting at the direction or request of an investigative or law enforcement officer to intercept a wire or oral communication involving suspected criminal activities where:

(i) such officer or person is a party to the communication; or (ii) one of the parties to the communication has given prior consent to such interception. However, no interception under this paragraph shall be made unless the Attorney General or a deputy attorney gen-

---

**6.** The "telephone extension" exception is the subject of much discussion among the courts. *See generally,* J. Carr, *The Law of Electronic Surveillance,* Section 3.2(d)(1) (2d ed. 1986); Miller, "Permissible Surveillance Under State Communications Interception Statute by Person Other than State or Local Law Enforcement Officer or One Acting in Concert with Officer," 24 A.L.R.4th 1208 (1986) and cases cited therein.

eral designated in writing by the Attorney General, or the district attorney, or an assistant district attorney designated in writing by the district attorney, of the county wherein the interception is to be made, has reviewed the facts and is satisfied that the consent is voluntary and has given prior approval for the interception; however such interception shall be subject to the recording and record keeping requirements of section 5714(a) (relating to recording of intercepted communications) and that the Attorney General, deputy attorney general, district attorney or assistant district attorney authorizing the interception shall be the custodian of recorded evidence obtained therefrom.

18 Pa.Cons.Stat.Ann.Sec. 5704(2). It is not questioned that Corporal Hoffmaster was not a "party to the communication" pursuant to subsection 2(i). Further, it is clear that the officer failed to receive prior approval for an interception pursuant to subsection 2(ii).

Although on first impression it appears that the "telephone extension" exception is inconsistent with the provisions of Section 5704(2), we conclude that it is not. Section 5704(2) permits a law enforcement officer to make an interception under the circumstances stated therein. Since, pursuant to *Hammond,* the use of a telephone extension furnished and used in the ordinary course of business is not an interception within the meaning of the Act, Section 5704(2) has no application. If a police officer were to use another means to overhear a telephone conversation or to use an extension telephone which does not come within the definition of "Intercepting device," Section 5702, then Section 5704(2) would apply.

In concluding that the conduct of the police officer in overhearing the conversation by extension telephone was proper in view of *Hammond* and was not proscribed by the Act, the evidence was properly admitted into evidence.

Judgments affirmed.