Commonwealth *v.* Roscioli, Appellant.

Argued May 1, 1973. Before EAGEN, O'BRIEN, ROB-
ERTS, POMEROY, NIX and MANDERINO, JJ.

*Andrea Levin,* Assistant Defender, with her *Jonathan Miller,* Assistant Defender, and *Vincent J. Ziccardi,* Defender, for appellant.

*Louis A. Perez, Jr.,* Assistant District Attorney, with him *Milton M. Stein,* Assistant District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE EAGEN, September 19, 1973:

This is an appeal from a per curiam order of the Superior Court, affirming the judgment of sentence imposed upon appellant, Charles Roscioli, following his conviction of burglary by a judge sitting without a jury. The sole question presented is whether the Commonwealth produced sufficient evidence to prove guilt beyond a reasonable doubt.

The record read in the light most favorable to the Commonwealth discloses the following pertinent facts:

On May 8, 1971, at approximately 1:45 a.m., police officers, Frederick Lederer and Robert Powers, received a radio call concerning a burglary in progress at a restaurant located at Second and Allegheny Streets in Philadelphia. As they approached that location, they saw appellant with Duane Kelly, a juvenile, standing outside a telephone booth alongside the restaurant. A female juvenile, later identified as Mickey Shelley, was inside the booth; although she was not using the phone at the time, the door to the booth was open. When appellant and his companions saw the police car, they started to run but were stopped by the police officers about six feet from the phone booth.

Officer Lederer then went to check the front of the restaurant. He placed his hand on the door and it immediately opened. Inside he observed two men, William Vidra and William Wolf, who were taken into custody.

The officers also testified that the pane of a window in the restaurant, located about a foot from the edge of the phone booth, was missing. The window pane was later found intact leaning against the back wall in the rear of the restaurant. Officer Lederer testified, "There was no breaking of the glass, so, evidently, someone took the putty out . . . ."

Meanwhile, Officer Powers detained the three people who were at the telephone booth, and upon searching appellant found a ten-inch knife in his right front pocket.

Louis Joseph, the owner of the luncheonette, testified that when he had left the store at about 3:00 p.m. on May 7th, everything had been secure. When he came back the next day after the police notified him of the burglary, he found three plastic bags near the door loaded with meat, cigars and candy worth four or five hundred dollars. These items had been removed from various parts of the store and placed in the bags; the plastic bags had not been there when Joseph left the store. He also testified that a night light which showed outside was left on.

Appellant testified in his own behalf, and denied any involvement in the burglary. On May 7th, he had worked from 3:30 p.m. to 12:00 a.m. at the Craftex Mills at Kensington and Venango Streets. After finishing work, he took a bus and got off at Front and Allegheny Streets where he met Duane Kelly, a runaway, and Mickey Shelley, the two individuals arrested with him. At that time they all started to walk toward his home. When appellant realized he didn't have his keys, he went to the phone booth involved, which was approximately a half block from his home, in order to call and

awaken his mother so that she would let him in. Appellant then heard police sirens so he hung up the phone and walked out to the street to see what had happened. He noticed there were numerous police cars across the street in front of a bar. He thought perhaps there was a holdup there. At this time Officers Lederer and Powers pulled up.

After the testimony was closed, the trial judge said: "We do not believe the defense that defendant had no knowledge that the restaurant was being burglarized and that he was not a participant in the event," and he entered an adjudication of guilt.

On the record before us, we rule the Commonwealth did not produce sufficient evidence to establish Roscioli's guilt beyond a reasonable doubt, thus the conviction of burglary must fall.

To sustain a conviction, the facts and circumstances which the Commonwealth prove must be such that every essential element of the crime is established beyond a reasonable doubt.[1] Although the Commonwealth does not have to establish guilt to a mathematical certainty, and may in the proper case rely wholly on circumstantial evidence,[2] the conviction must be based on more than mere suspicion or conjecture.[3]

Without repeating the evidence in its entirety, the essence of it is this:

---

[1] Cf. *Commonwealth v. Radford*, 428 Pa. 279, 236 A. 2d 802 (1968); *Commonwealth v. Finnie*, 415 Pa. 166, 202 A. 2d 85 (1964); *Commonwealth v. Carroll*, 412 Pa. 525, 194 A. 2d 911 (1963); and *Commonwealth v. Kravitz*, 400 Pa. 198, 161 A. 2d 861 (1960).

[2] Cf. *Commonwealth v. Cimaszewski*, 447 Pa. 141, 288 A. 2d 805 (1972); *Commonwealth v. Sullivan*, 445 Pa. 616, 284 A. 2d 504 (1971); *Commonwealth v. Slavik*, 437 Pa. 354, 261 A. 2d 583 (1970); and *Commonwealth v. Thomas*, 429 Pa. 227, 239 A. 2d 354 (1968).

[3] *Commonwealth v. Cimaszewski*, supra, n. 3; *Commonwealth v. Simpson*, 436 Pa. 459, 260 A. 2d 751 (1970); *Commonwealth v. Garrett*, 423 Pa. 8, 222 A. 2d 902 (1966); *Commonwealth v. Bausewine*, 354 Pa. 35, 46 A. 2d 491 (1946); *Commonwealth v. Cohen*, 203 Pa. Superior Ct. 34, 199 A. 2d 139 (1964).

Roscioli and two companions were standing at a telephone booth located on the side of a restaurant being burglarized by two other men. In an attempt to connect Roscioli with the burglary in progress, the Commonwealth stressed: (1) that near the telephone booth was a window, the glass pane of which had been removed and placed in the rear of the building; (2) that Roscioli and his companions attempted to quickly depart when the police car arrived, and lastly; (3) that Roscioli admitted having previously seen Vidra and Wolf "around the neighborhood."

On these facts, there was insufficient evidence to convict Roscioli of being a party to the burglary. The most the Commonwealth established is Roscioli was in the vicinity of the burglary in the company of two juveniles during the commission of the crime. There was no proof Roscioli removed the window pane or even knew of its removal, nor was even aware a crime was being committed. The hasty departure was explained at trial, as being an attempt by Roscioli and the two juveniles to see if a holdup had occurred at a bar across the street. Lastly, although Roscioli admitted knowing Wolf and Vidra, his acquaintance was explained because he lived in the same neighborhood and there was no showing that he was or had been with them that night[4] or even that he knew of their presence inside of the restaurant.

In *Commonwealth v. Garrett*, 423 Pa. 8, 222 A. 2d 902 (1966), this Court rejected the proposition that presence at the scene of a crime in the company of the alleged perpetrators is sufficient to sustain a conviction. In *Garrett*, this Court stated:

---

[4] At the reconsideration of sentence hearing, William Wolf, one of the men who had been found inside the restaurant and who had pleaded guilty to the burglary, testified that Roscioli was not in any way involved in the crime.

"In the instant case, no attempt was made to establish appellant's guilt as a principal in the second degree or an accessory before the fact. Accordingly, it was incumbent upon the Commonwealth to establish appellant's participation in the assault and robbery. We are of the view, however, that the evidence of such participation was so weak and inconclusive that as a matter of law the inferences of fact necessary to establish guilt could not be reasonably drawn. See Commonwealth v. Libonati, 346 Pa. 504, 508, 31 A. 2d 95, 97 (1943).

"Appellant's presence on the scene, both immediately prior and subsequent to the commission of the crime was established. This fact, however, in the absence of other evidence indicative of appellant's participation in the robbery, did not warrant submission of the case to the jury.

"The victim, while testifying to the presence of four men in the area prior to the attack, was unable to establish the actual number of his assailants. Under such circumstances, the inference that appellant participated in the crime is no more cogent than the version of the events contained in his statement . . . . Since, on the present record, mere presence on the scene was insufficient, such evidence was lacking. Cf. Commonwealth v. New, 354 Pa. 188, 47 A. 2d 450 (1946). Accordingly, appellant's conviction of robbery may not stand." 423 Pa. 12-13, 222 A. 2d at 905.[5]  See also *Commonwealth v. Bailey*, 448 Pa. 224, 292 A. 2d 345 (1972).

---

[5] 1 Wharton's Criminal Law and Procedure, §108 (1957) notes:

"[T]he mere fact that a person is present at the scene of a crime but does not in any way participate in or encourage its commission does not make him a principal even in the second degree. Hence, although a man is present while a felony is committed, yet if he takes no part in it, and does not act in concert with those who commit it, he will not be a principal in the second degree merely because he does not endeavor to prevent the felony or apprehend the felon.

A case very similar factually to the instant case is *Perry v. United States*, 276 A. 2d 719 (D.C. C.A. 1971). There on a Sunday morning two police officers saw appellant standing about two feet in front of a broken front window of a store. The officers entered the store, saw the store freezer wide open, and also observed near the front entrance a large box containing meats and cigarettes. Hearing noises in the basement, the officers went there and found two men hiding. All three were arrested on the charge of burglary. In reversing the conviction and ordering the entry of a judgment of acquittal, the Court stated at pp. 719, 720: "In summary, the only evidence against appellant was that he was standing in front of the broken window of a store that was being burglarized by two other men, with one of whom he had a casual acquaintance. In our opinion this evidence, while perhaps raising a possibility or even strong suspicion of participation in the criminal activity, was not sufficient for finding appellant guilty beyond a reasonable doubt."

The difference between *Perry* and the instant case is that as the police car approached the scene, the three individuals at the phone booth started to leave the area quickly. The Commonwealth argues, that this fact establishes guilt. See *Commonwealth v. Collins*, 440 Pa. 368, 269 A. 2d 882 (1970) ; *Commonwealth v. Osborne,*

---

"The fact that the witness may approve the commission of the crime does not make him a principal if he had not in any way manifested to the criminals that he shares their purpose and is acting with them. Something must be shown in the conduct of the bystander which indicates a design to encourage, incite, or in some manner afford aid or consent to the particular act."

In other words, the Commonwealth has the burden to not simply show the accused's presence at the scene but to show by substantive evidence that the accused was an "active partner" of the actual perpetrators. *Commonwealth v. McFadden*, 448 Pa. 146, 292 A. 2d 358 (1972).

433 Pa. 297, 249 A. 2d 330 (1969); *Commonwealth v. Coyle,* 415 Pa. 379, 203 A. 2d 782 (1964).

This Court in *Commonwealth v. Bailey,* supra, handled an analogous problem, and held as follows: "We do not believe this one fact alone [flight] is sufficient, especially as in this case where the appellant is not the actual thief. To hold this to be sufficient evidence to sustain the conviction requires us to make too many assumptions not based on facts in the record. It requires us to assume that Bailey knew that a crime had been committed and the individual in the back seat had committed the crime and that the goods were in the car. Although the fact that Bailey drove the automobile away without responding to Pettolina's request to permit a search of the trunk might give rise to an inference that the stolen goods were secreted therein with Bailey's knowledge, it is just as reasonable to assume therefrom that Bailey knew nothing of the crime, and when accused of being involved in a crime of which he knew nothing about, he took flight out of fear. Convictions in criminal cases may not and will not be allowed to stand on guesswork or conjecture."[6] 448 Pa. at 229-30,

---

[6] The United States Court of Appeals for the District of Columbia held in *Bailey v. United States,* 416 F. 2d 1110, 1114-15 (D.C. Cir. 1969):

"The evidentiary value of flight, however, has depreciated substantially in the face of Supreme Court decisions delineating the dangers inherent in unperceptive reliance upon flight as indicium of guilt. We no longer hold tenable the notion that 'the wicked flee when no man pursueth but the righteous are as bold as a lion.' The proposition that 'one who flees shortly after a criminal act is committed or when he is accused of committing it does so because he feels some guilt concerning that act' is not absolute as a legal doctrine 'since it is a matter of common knowledge that men who are entirely innocent do sometimes fly from the scene of a crime through fear of being apprehended as the guilty parties, or from an unwillingness to appear as witnesses.'

"With cautious application in appreciation of its innate shortcomings, flight may under particular conditions be the basis for

292 A. 2d at 347. See also *Commonwealth v. Pegram,* 450 Pa. 590, 301 A. 2d 695 (1973).

Accordingly, there was no direct evidence to establish Roscioli knew the window pane was removed from the restaurant, or even that there was a burglary in progress, nor that he was running from the police. But assuming these are reasonable inferences from the proof, they are not sufficient in our view to establish Roscioli was involved in the burglary. Because such conclusions depend too much on conjecture, a criminal conviction based wholly on inference, suspicion and conjecture may not stand. See *Commonwealth v. McFadden,* supra.

Reversed.

Mr. Chief Justice JONES took no part in the consideration or decision of this case.

Mr. Justice POMEROY and Mr. Justice NIX dissent.

---

an inference of consciousness of guilt. But guilt, as a factual deduction, must be predicated upon a firmer foundation than a combination of unelucidated presence and unelucidated flight. Here there was no evidentiary manifestation that the appellant was prompted by subjective considerations related in any wise to the crime. Moreover, as the evidence disclosed appellant had several convictions prior to the affair in suit, and these might well have dictated what seemed to him to be best. Absent anything more, there was no more basis for attributing his flight to complicity in the robbery than to a purpose consistent with innocence." [Footnotes omitted.]