## Commonwealth v. Spesak

*Frederick S. Wolfson* and *Thomas S. Long*, Assistant *District Attorneys*, for Commonwealth.

*Robert C. Rowe*, of *Spitler, Rowe and Kilgore*, for defendants.

PER CURIAM, December 15, 1976—Defendants Dale Thomas Spesak, Terrance Richard Snyder and Robert L. Donmoyer were tried jointly and convicted of criminal mischief by a jury in the March 1976 term of criminal court. All filed post-trial motions in arrest of judgment, or in the alternative, for a new trial.

We will treat with the errors assigned in the motions and those seasonably filed later as additional and supplemental reasons, seriatim.

I

The first contentions advanced by defendants are broad based: the verdict was against the evidence, the weight of the evidence and contrary to law; the evidence was insufficient to sustain the verdict.

The evidence discloses that in the early morning hours of January 16, 1976, at approximately four o'clock, defendants opened a fire hydrant on the

east side of North Eleventh Avenue, North Lebanon Township, just outside the city limits of Lebanon. A hydrant valve was opened far enough to allow water from it to gush a distance of three or four feet over the street before hitting the road surface. North Eleventh Avenue having a grade of 15 to 20 percent leading southwardly from the hydrant, it took only a few seconds for the water to flow 50 feet. Julian Weiant, Chief of Police for North Lebanon Township, happened upon the scene at that juncture. He saw no cars going either direction on North Eleventh Avenue;[1] shortly thereafter he discovered defendants slouched down so as to avoid being seen in a vehicle directly across the street from the hydrant. The vehicle contained tools which fit the hydrant and a pair of wet gloves.

Houses were as close as 50 yards from the open hydrant. Lebanon Village, with its low income duplex housing, is located just one-tenth of a mile away. Many other residences dot the area. Furthermore, there are no other hydrants on North Eleventh Avenue between Cedar Crest Drive and Mifflin Street—a distance of over 200 yards. Had a fire occurred in any area supplied by city water without the discovery that the hydrant was open, the ability to deliver water under pressure would be less efficient.

When fire occurs during periods of high water consumption, booster pumps are activated by water department personnel to meet the extra demand. But in early morning hours with consumer use at a low ebb the employment of pumps may or

---

1. Conversely and curiously, two of the three defendants each describe a car leaving the scene—but going in opposite directions—just before Weiant's advent.

may not have been thought necessary depending, supposedly, on the size of the conflagration.

Had the open fire hydrant not been discovered as quickly as it was by chief Weiant and allowed to spew forth its precious liquid for an extended time span, the water supply itself for that area could have been adversely affected; indubitably with temperatures hovering at 22° Farenheit much larger portions of Mifflin and Lehman Streets would have been decked out with ice.

Despite the nearly immediate discovery by chief Weiant, the hydrant was not closed for 30 minutes because city water department personnel were not available sooner. Eleventh Avenue south to Lehman Street, one and one-half blocks of Mifflin Street and a block or so of Lehman were partially iced, thereby causing abruptly hazardous driving for anyone new to the scene without warning.

Defendants labor long and arduously in their attempt to persuade us the Commonwealth's case, founded on circumstantial evidence, is nothing more than a house of cards. But the emphasis is misdirected, for it has long been the doctrine followed by Pennsylvania courts that such proof is an acceptable mode for establishing guilt.

The Superior Court in Com. v. Marino, 142 Pa. Superior Ct. 327, 16 A. 2d 314 (1940), put it rather succinctly: "When a crime charged is sought to be sustained wholly by circumstantial evidence the circumstances proved should be such as reasonably and naturally to justify an inference of the guilt of the accused, and should be of such volume and quality as to overcome the presumption of innocence and satisfy the jury of the accused's guilt beyond a reasonable doubt." See also Com. v.

Lewis, 190 Pa. Superior Ct. 591, 155 A. 2d 410 (1959).

In Com. v. Bell, 189 Pa. Superior Ct. 389, 150 A. 2d 174 (1959), the court held that a conviction of crime may rest wholly on circumstantial evidence. No longer is it the law that facts and circumstances must exclude every hypothesis but that of guilt of the offense imputed.

Defendants assiduously argue the Commonwealth has shown nothing more than their presence at the crime. Under the law that is insufficient to convict. For support they rely on Com. v. Myers, 14 Leb. 274 (1973), and cases cited; Com. v. Stanley, 453 Pa. 467, 309 A. 2d 408 (1973), and Com. v. Roscioli, 454 Pa. 59, 309 A. 2d 396 (1973). Those cases are inapposite, and defendants' reliance on them is misplaced.

In contrast the jury in the case at bar could consider not only defendants' presence; the wet gloves found in their vehicle; chief Weiant's happening on the scene just seconds after the hydrant was opened—given the incline of the street, the force of the water and the relatively short distance it traveled by then; no other people or vehicles seen by Weiant leaving the immediate vicinity. But the jury could also contemplate one of the wrenches had yellow paint on it at a location where the wrench would have contacted the yellow top of the hydrant, although admittedly the laboratory tests on the paint were inconclusive; the plausibility of defendants' presence itself;[2] the fact that the motor in

---

2. None of them lived in the area nor was North Eleventh Avenue on the way home for any of them from whence they had

defendants' vehicle was not running when Weiant arrived; and the credibility of the two defendants whose statements concerning a car leaving just before he got there, diametrically conflicted. Those factors are not coincidental with and are manifestly more damning than the circumstances of the cases cited by defendants.

In the information filed by the district attorney defendants were charged with criminal mischief " . . . in that they unlawfully and feloniously did intentionally or recklessly cause substantial interruption or impairment to a supply of water which was the property of the Lebanon City Water Department, namely, by tampering with a fire hydrant, situated on North Eleventh Avenue, approximately one hundred yards south of Cedar Crest Drive, on the east side of the roadway, in North Lebanon Township, Lebanon County, Pa., in that they did create a risk of catastrophe causing water to flow upon the highway and freeze . . . "

The test for determining sufficiency of the evidence to support the conviction of the crime is " . . . whether, accepting as true all of the evidence, be it direct or circumstantial, and all reasonable inferences arising therefrom upon which, if believed, the trier of facts could properly have based the verdict, it is sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crime or crimes of which he has been convicted." Com. v. Malone, 444 Pa. 397, 281 A. 2d 866 (1971); Com. v.

---

come. Nor were they making any attempt to turn off the water, consistent with the implication of their statement given Weiant that they were checking hydrants because they "heard that there are people going around and opening the hydrants."

Johnson, 458 Pa. 23, 326 A. 2d 315 (1974). Furthermore, it is well established our role in reviewing the testimony is to accept the evidence in a light most favorable to the Commonwealth which is entitled to the benefit of all reasonable inferences arising from it: Com. v. Robson, 461 Pa. 615, 337 A. 2d 573 (1975); Com. v. Oates, 448 Pa. 486, 295 A. 2d 337 (1972); Com. v. Moyer, 232 Pa. Superior Ct. 120, 334 A. 2d 764 (1975).

Having done that we are satisfied the elements of the offense and the identity of the perpertrators of it have been proven beyond a reasonable doubt.

## II

Defendants argue they were charged under the wrong section of the Crimes Code and, therefore, merit a new trial in the very least or arrest of judgment at best. It is a matter of allegata et probata in the pure specie.

Section 3304(b) of the Crimes Code of December 6, 1972, P.L. 1482, 18 C.P.S.A. §3304, which defendants have been charged with violating, provides in pertinent part "[c]riminal mischief is a felony of the third degree if the actor intentionally causes . . . a substantial . . . impairment of public . . . supply of water . . . "

We have already spoken to this point under the first issue. The analysis urged by defendants is not persuasive. Actually, it requires no stretch at all of one's imagination to perceive the link between pressure and supply. For reduced pressure means less water speed; and if water flows out of a fixture, be it a spigot or a hydrant, at a slower than normal rate, one receives less of a supply of water in a given period than he otherwise would.

Whether a drop in pressure caused by the opening of the only fire hydrant serving a rather large area could be equated with *substantial* impairment, and whether the partial flooding of major streets was risking a catastrophe, were questions for the jury to answer. We cannot as a matter of law disagree with their decision. Where a substantial interruption or impairment of public service is proven, the criminal mischief is a felony of the third degree, regardless of any monetary amount of damage done. See Com. v. Miller and Kauffman, 234 Pa. Superior Ct. 146, 339 A. 2d 573 (1975). The jury examined not only what *did* happen, but what *could have* happened, chose to accept the Commonwealth's evidence and answered each question in the affirmative.

Hence, the Commonwealth successfully carried its burden demanded by that Latin principle.

### III

After introducing into evidence one of the wrenches in question, the district attorney removed it from the courtroom for the duration of a short recess. Upon resumption of proceedings defendants immediately moved for a mistrial. After questioning the district attorney, ascertaining that fraudulent or mischievous activity respecting the wrench could neither readily be discerned nor demonstrated, and counsel for defendants having declined the district attorney's offer to present detailed testimony on the "travels" of the wrench, the trial court denied the motion. Defendants now urge such denial is reversible error.

A close reading of the record reveals defendants were not prejudiced by that judgment.[3] The trial court, free to deal with such matters as it chooses, did not abuse its discretion. Nor can defendants direct us to legal precedents holding the contrary.

## IV

Next defendants assert the trial court erred in refusing their demurrer to the evidence and in failing to direct the jury to find a verdict of not guilty. The scales for weighing the merits of those two contentions are identical to the balance utilized in pondering the virtues of defendants' first argument.

In deciding either, it is encumbent on the trial judge to view the evidence and inferences reasonably to be drawn from it in a light most favorable to the Commonwealth, resolving all doubts in its favor. Having put the record in that frame of reference—and carefully considering the Commonwealth's case,[4] we are satisfied there was sufficient factual evidence for the jury to consider from which, on a reasonable basis, they could find in favor of the Commonwealth.

Therefore, we find no error in the trial court's action taken here.

---

3. Moreover, defendants had a superb opportunity for determining just what did happen to the wrench in its absence, but declined to seize it. They should not now be permitted to bootstrap themselves into a position of advantage at the expense of the Commonwealth and the court.

4. Defendants exercised their constitutional right not to testify and to refrain from producing any evidence.

## V

Finally, in one package defendants wrap six assignments of error. But the box is light, four of the contentions having expired from an utter lack of life-giving argument in defendants' brief. Nor is there a scintilla of substance showing those four alleged errors to be harmful, much less fatal! Hence, they are not properly before the court as they must not only be raised, but argued, to be perpetuated.

We will treat with the other two.

The first allegation of reversible error focuses on that portion of the trial court's charge related to chief Weiant's discovery of the defendants across the street from the open hydrant. The judge did not tell the jury, that as a matter of law, mere presence at the scene of a crime without more is insufficient to convict.[5] Instead, the trial judge explained it was a *contention* of defendants.

We believe the instruction was incomplete, but it does not constitute reversible error. The overwhelming weight of authority in Pennsylvania requires the court's charge to be reviewed as a whole. If the issues have been fairly put to the jury the verdict will not be disturbed even though isolated portions of the charge may be subject to criticism.

Having scrutinized the charge in its entirety we conclude the test of fairness has been met. The charge overall more than adequately produced a proper framework within which the jury could reach its decision. Thus, that assignment of error falls for lack of support.

---

5. See Com. v. Myers, supra; Com. v. Stanley, supra; and Com. v. Roscioli, supra.

The last assignment of error poses an enigmatic proposition. Defendants allege as fatal, failure to charge on negative circumstantial evidence. We are at a loss to discern just what it is defendants are driving at. But, no matter; the jury instructions articulated by the trial court, taken as a whole, were sufficient. And defendants have given us no legal citations on which to predicate the lethal blow to the supposed aberration. We suspect, however, that there are none. Consequently, we find this assignment of error lacks merit, as did all others.