J-S52012-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DAVID MEN | : | |
| | : | |
| Appellant | : | No. 307 EDA 2020 |

Appeal from the Judgment of Sentence Entered December 11, 2019
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0007867-2017

BEFORE:   PANELLA, P.J., McCAFFERY, J., and STEVENS, P.J.E.*

MEMORANDUM BY PANELLA, P.J.:                    **FILED: APRIL 5, 2021**

David Men appeals from the judgment of sentence entered on December 11, 2019, in the Court of Common Pleas of Philadelphia County, made final by the denial of post-sentence motions on December 27, 2019. The trial court imposed an aggregate term of eight to 16 years' incarceration, followed by two years' probation, after a jury convicted him of burglary (overnight accommodations, person present), criminal conspiracy (burglary), and possession of an instrument of crime ("PIC").[1] The court separately found him guilty of one count of illegally possessing a firearm.[2] On appeal, Men complains

_____

* Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 3502(a)(1)(i), 903, and 907(a), respectively.

[2] 18 Pa.C.S.A. § 6105(a)(1). Men was ineligible due to a prior conviction.

there was insufficient evidence to support his burglary and conspiracy convictions and he challenges the discretionary aspects of his sentencing. Based on the following, we affirm.

Men's convictions stem from a burglary that took place on June 30, 2017. On that date, at approximately 11:00 p.m., the complainant, Yuexiao Jiang, was in one of the upstairs bedrooms of her South Philadelphia row home with her mother-in-law, her two young children, and her four-year-old nephew. Jiang's son heard the bedroom door open and observed someone's head peep inside. The son asked Jiang if his grandfather had come home. Jiang went into the hallway and looked down the stairs. She saw the back of an unfamiliar man leaving the house.

Jiang then called her husband and father-in-law, and asked them if they were recently home and whether they had gone outside. Both men indicated that they had not been home. Jiang's husband sent her a clip of video surveillance footage from inside the home, which revealed that three unknown men had been in the residence.[3] The couple then called the police.

Subsequently, on July 27th, Probation and Parole Agent Starnetta Streaty viewed surveillance footage of the burglary, and she identified Men's cohort, Tony Nhep, as one of the three men inside the home. She knew Nhep personally and had met him approximately ten times between January and

---

[3] The men did not take anything from the residence.

June of 2017. She also identified two of his tattoos from still shots of the video. Police Officers Chris Lai and Brian Ho positively identified Men and Vutha Mok as the other men in the surveillance video. The video also showed that Mok had a firearm in his right hand as he walked around the home.

All three men were both arrested and charged with numerous crimes following the burglary. Men and Nhep were tried jointly[4], and a jury found them guilty of burglary, criminal conspiracy, and PIC. The court found Men and Nhep guilty of illegally possessing a firearm after they waived their right to a jury trial on that offense.

On December 11, 2019, the court sentenced Men to term of eight to 16 years' incarceration, following by two years of probation, on both the burglary and conspiracy convictions.[5] The sentences were to run concurrently. The court imposed no further penalty on the PIC and illegally possessing a firearm convictions.

---

[4] Mok pled guilty to burglary and weapon offenses on July 18, 2018.

[5] Men's sentencing was delayed because he was committed to a state hospital pursuant to the Mental Health Act.

Men filed a post-sentence motion for judgment of acquittal and reconsideration of his sentence. The trial court denied the motion on December 27, 2019. This timely appeal followed.[6, 7]

In his first argument, Men contends there was insufficient evidence to support his burglary and conspiracy convictions because the Commonwealth did not demonstrate that he and the other two individuals intended to commit the crime of theft inside the complainant's residence. **See** Appellant's Brief, at 17. In other words, Men challenges the intent element of burglary. He states that neither he nor his co-defendants "possessed any burglary tools, means of carrying items from the residence, and they did not nothing to hide their identities." Appellant's Brief, at 19. Rather, he alleges the evidence demonstrated the three men "had no intention of doing anything besides just looking around" and "[t]hat [wa]s all the videos showed." **Id.** Additionally, Men complains that because there was insufficient evidence to convict him of burglary, there was also insufficient evidence to find him guilty of conspiracy to commit burglary. **See id.**, at 20.

Our standard of review regarding a sufficiency of the evidence claim is well-settled:

---

[6] The trial court did not direct Men to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Moreover, the assigned trial judge did not submit a Pa.R.A.P. 1925(a) opinion because he is no longer sitting on the bench for the Philadelphia Court of Common Pleas.

[7] Nhep also filed a direct appeal, which is docketed at No. 3458 EDA 2018.

The standard we apply ... is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Edwards***, 229 A.3d 298, 305-306 (Pa. Super. 2020)

(quotation and internal brackets omitted).

The crime of burglary is defined, in relevant part, as follows:

(a) Offense defined. - A person commits the offense of burglary if, with the intent to commit a crime therein, the person:

(1)

…

(ii) enters a building or occupied structure, or separately secured or occupied portion thereof that is adapted for overnight accommodations in which at the time of the offense any person is present[.]

18 Pa.C.S.A. § 3502(a)(1)(ii).

A burglary is deemed "complete"

when the felon breaks into the building either actually, or constructively by fraud, conspiracy or threats, with the intent [to

commit a felony therein]. Consummation or execution of the intent to steal or to commit some other felony is not necessary to complete the crime of burglary.... Whatever felony is committed in the building broken into is separate and distinct from the offense of breaking and entering into that building.

*Commonwealth v. Tavarez*, 174 A.3d 7, 12 (Pa. Super. 2017) (quotation omitted).

As with all states of mind, the Commonwealth may establish the specific intent to commit a felony during a break-in with circumstantial evidence:

[t]he intent to commit a crime after entry may be inferred from the circumstances surrounding the incident. While this intent may be inferred from actions as well as words, the actions must bear a reasonable relation to the commission of a crime. Once one has entered a private residence by criminal means, we can infer that the person intended a criminal purpose based upon the totality of the circumstances. The Commonwealth is not required to allege or prove what particular crime a defendant intended to commit after his forcible entry into the private residence.

*Commonwealth v. Lambert*, 795 A.2d 1010, 1022 (Pa. Super. 2002) (internal citations omitted). *See also Commonwealth v. Morgan*, 401 A.2d 1182, 1187 (Pa. Super. 1979) ("Proof of intent is often difficult, and the method of proof will vary depending upon the facts of a given case.").

Moreover, the Pennsylvania Supreme Court has previously held that there is no requirement that the Commonwealth allege that the defendant intended to commit a particular crime. *Commonwealth v. Alston*, 651 A.2d 1092, 1095 (Pa. 1994). However, "[w]hen the Commonwealth does specify, in the information or indictment, the crime defendant intended to commit, the Commonwealth must prove the requisite intent for that particular crime in

order to prove a burglary or attempted burglary." ***Commonwealth v. Brown***, 886 A.2d 256, 260 (Pa. Super. 2005).[8]

Viewing the evidence and reasonable inferences derived therefrom in a light most favorable to the Commonwealth as the verdict winner, we conclude there was sufficient evidence to establish that Men and the other two men entered the Jiang's home with the specific intent to commit a theft therein. A review of the record reveals that Men and his two cohorts entered the home by prying open a basement window at approximately 11:00 p.m. on a July night, while Jiang and her family were either in bed or getting ready for bed. **See** N.T., 8/15/2018, at 138, 142, 145; ***see also*** N.T., 8/16/2018, at 100-101. Jiang did not know Men or the other individuals, and she did not permit them into her home. **See** N.T., 8/15/2018, at 139-141.

When one of the men opened the door to the bedroom, Jiang's son asked his grandmother if his grandfather had come home. ***See id.***, at 138. Jiang looked up and did not recognize the person. ***See id.*** She then went into the hallway, looked down the stairs, and saw the back of an unfamiliar man

---

[8] A review of Men's criminal information reveals the Commonwealth did not specify which particular crime Men intended to commit during the burglary as forth in 18 Pa.C.S.A. § 3502(a)(1)(i). **See** Information, 9/29/2017, at 1. However, the trial court's jury charge tracked the language contained in 18 Pa.C.S.A. § 3502(a)(1)(ii), indicating the underlying crime as theft. **See** N.T., 8/17/2018, at 61. Men acknowledges that he did not object to this charge. **See** Appellant's Brief, at 18. As a result, he was convicted of burglary pursuant to Section 3502(a)(1)(ii).

leaving the house. *See id.*, at 138-139. Jiang's husband sent her a clip of video surveillance footage from inside the home, which revealed that three men had been in the residence, and that one of them, Mok, had a firearm in his right hand as he walked around the home.[9] *See id.*, at 141; *see also* N.T., 8/16/2018, at 64. Men was seen wearing black gloves in the video. *See id.*, at 54. The perpetrators did not take anything from the residence.

This evidence was more than sufficient to provide the factual basis to support Men's burglary conviction. The matter took place on a summer night and Men was observed wearing black gloves, which implies that he did not want to leave fingerprints. The incident also "involved a residence, which one ordinarily expects to contain items of value that can be removed by a single individual without the use of special tools." *Morgan*, 401 A.2d at 1187. Moreover, the men pried open a basement window to gain entry into the home. *See Alston*, 651 A.2d at 1095 ("Once [a defendant] has entered [a] private residence by criminal means we can infer that [defendant] intended a criminal purpose based upon the totality of the circumstances."). Furthermore, once Jiang's son spoke after seeing one of the men open the door to the bedroom, the individual immediately turned around and all three men left the home. One can reasonably infer they fled because they had been discovered. *See Commonwealth v. Hargrave*, 745 A.2d 20, 23 (Pa. Super. 2000)

---

[9] Our review of the video corroborates the facts set forth by the trial court.

(holding that "[f]light does indicate consciousness of guilt, and a [fact-finder] may consider this as evidence, along with other proof, from which guilt may be inferred.") (internal quotation marks omitted). Additionally, the surveillance video captured Mok walking around the home with a firearm in his hand. Lastly, we note that even though they did not take anything is of no consequence as "[c]onsummation or execution of the intent to steal … is not necessary to complete the crime of burglary." **Tavarez**, 174 A.3d at 12. Therefore, we conclude that the evidence was sufficient to prove Men and his cohorts intended to commit the crime of theft inside the complainant's residence.

Additionally, there was sufficient evidence to support his conspiracy conviction. In order to convict a defendant of criminal conspiracy,

> the Commonwealth must prove: (1) the defendant intended to commit or aid in the commission of the criminal act; (2) that the defendant entered into an agreement with another to engage in the crime; and (3) the defendant or one or more of the other co-conspirators committed an overt act in furtherance of the agreed upon crime. As it is often difficult to prove an explicit or formal agreement, the agreement generally is established via circumstantial evidence, such as by the relations, conduct, or circumstances of the parties, or the overt acts on the part of co-conspirators.

**Commonwealth v. Le**, 208 A.3d 960, 969 (Pa. 2019). **See also** 18 Pa.C.S.A. § 903.

As noted above, Men complains that because there was insufficient evidence to convict him of burglary, there was also insufficient evidence to find him guilty of conspiracy to commit burglary. This argument fails for

several reasons. First, we previously determined there was sufficient evidence to support his burglary conviction. Second, the record supports the finding where (1) Men and Nhep were beside Mok while they walked around Jiang's home; (2) Men's co-conspirator, Mok, visibly possessed a firearm during the course of the burglary that could be used for protection; and (3) the three men left together after having been seen by occupants of the home. Therefore, we conclude the circumstantial evidence, including the conduct the parties demonstrated there was an agreement among the three co-conspirators. Accordingly, Men's sufficiency arguments fail.

In his second argument, Men contends the trial court abused its discretion by imposing manifestly excessive and unreasonable aggregate sentence because the court "overly focused on the crime[s], while completely ignoring the sentencing guidelines, Mr. Men's individual characteristics, and the circumstances of the case." Appellant's Brief, at 21.

Challenges to the discretionary aspects of sentencing do not guarantee a petitioner's right to our review. *See Commonwealth v. Allen*, 24 A.3d 1058, 1064 (Pa. Super. 2011).

> An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test: (1) whether appellant has filed a timely notice of appeal, see Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

*Commonwealth v. Swope*, 123 A.3d 333, 337 (Pa. Super. 2015) (citation omitted).

Here, Men filed a timely notice of appeal, and his brief included a statement of reasons relied upon for allowance of appeal, as is required by Pa.R.A.P. 2119(f). *See* Appellant's Brief, at 15-16. He also preserved the issue in a post-sentence motion. *See* Post-Sentence Motion Pursuant to Pa.R.Crim.P. 720, 12/20/2019, at unnumbered 3-4. Therefore, we must determine whether Men has raised a substantial question.

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." *Commonwealth v. Prisk*, 13 A.3d 526, 533 (Pa. Super. 2011). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Id.* (internal citations omitted). "[A]n allegation that the sentencing court failed to consider mitigating factors generally does not raise a substantial question for our review." *Commonwealth v. Rhoades*, 8 A.3d 912, 918-919 (Pa. Super. 2010). Nevertheless, an "excessive sentence claim[ ] in conjunction with an assertion that the court did not consider mitigating factors[,]" does present a substantial question for our review. *Commonwealth v. Gonzalez*, 109 A.3d 711, 731 (Pa. Super. 2015) (citation omitted). Moreover, an allegation that the court considered improper factors

when imposing an aggregate range sentence also raises a substantial question. **Commonwealth v. Stewart**, 867 A.2d 589, 592 (Pa. Super. 2005). As this claim raises a substantial question, we proceed to examine the merits of Men's sentencing challenge.

Here, Men complains that the trial court disregarded certain individual characteristics and circumstances of the case and overly focused on the crimes he committed in the present case and his criminal history. **See** Appellant's Brief, at 23. Men also alleges that the court "failed to properly consider the sentencing guidelines as mandated." **Id.**, at 23. Men contends that certain statements made by the court at the sentencing proceeding were a mischaracterization of the evidence because Men and his co-conspirators did not know that people were in the home and once they discovered this, they left. **See** Appellant's Brief, at 24.

Furthermore, Men asserts the court discounted testimony from his wife and character letters demonstrating that he was a good father and neighbor by stating that he was not a good father. **See id.**; **see also** N.T., 12/11/2019, at 41. Lastly, Men states the court did not consider certain mitigating factors, including that he had mental health problems, he was in special education classes and did not graduate from high school, he lacked male role models, he had a drug addiction, he had never been in a dual diagnosis program, and he showed remorse and a desire to be there for his family. **See** Appellant's Brief, at 24-25.

We have a deferential standard of review for discretionary aspects of the sentence claims:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Shugars*, 895 A.2d 1270, 1275 (Pa. Super. 2006).

While the court is required to consider the sentence ranges set forth in the sentencing guidelines, it is not bound by them. *See Commonwealth v. Yuhasz*, 923 A.2d 1111, 1118 (Pa. 2007). The court may depart from the "guidelines, if necessary, to fashion a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offense as it related to the impact on the life of the victim and the community[.]" *Commonwealth v. Eby*, 784 A.2d 204, 206 (Pa. Super. 2001) (citation omitted); *see also* 42 Pa.C.S.A. § 9721(b).

If the court imposes a sentence outside the guideline ranges, it must place adequate reasons for the deviation in the record. *See Commonwealth v. P.L.S.*, 894 A.2d 120, 129-130 (Pa. Super. 2006). Nevertheless, we only vacate an outside-the-guidelines sentence if the "sentence is unreasonable[.]" 42 Pa.C.S.A. § 9781(c)(3).

In making this "unreasonableness" inquiry, we consider:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant.

(2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.

(3) The findings upon which the sentence was based.

(4) The guidelines promulgated by the commission.

42 Pa.C.S.A. § 9781(d).

Here, the sentencing judge had the benefit of a presentence investigation report ("PSI"), a psychological evaluation, and defense character letters. *See* N.T., 12/11/2019, at 15, 32. The Commonwealth indicated the conduct at issue was for Men's seventh first-degree felony burglary conviction. *See id.*, at 25.

The judge also heard from a defense witness, Rebecca Houth, who is Men's wife and the mother of his children. *See id.*, at 19. Houth stated Men helped her a lot, took care of the children, and assisted with her mother. *See id.* In response to Houth's testimony, the court heard a stipulated narrative statement made by a corrections officer, who previously interacted with Men while he was incarcerated:

> On Monday, August 20, 2018, at 19:40 hours inmate David Men was observed on camera by Officer Dozier, D-O-Z-I-E-R, retrieving two red balloons from his visitor Rebecca Houth. Ms. Houth placed those balloons in one of the two children's waistband and inmate Men retrieved it and placed it in his waistband in his orange jumpsuit. The visit was immediately terminated, and inmate Men was stripped searched and the two red balloons were recovered from the inmate's underwear. Inside the balloons was a brown substance with a glassy look that was tightly wrapped with a plastic wrap. Inmate Men was then escorted to medical and

placed in a prehearing segregation. Ms. Houth was detained. And the Philadelphia Police Department was contacted.

*Id.*, at 21-22.

Lastly, the judge heard Men's own statements during allocution, and argument from both parties. *See* N.T., 12/11/2019, at 22-38. Notably, the Commonwealth recommended a sentence that was a significant upward departure from the standard range. The judge asked the Commonwealth to explain its rationale, which the prosecutor set forth as follows:

> The law allows the Sentencing Court to take into account those types of situations, which is exactly where we are because a [Repeat Felony 1 and Felony 2 Offender ("REFEL")] does not adequately capture this defendant's criminal past.

> But aside from that you have the facts of this case, which are, obviously, residential property, but that is accounted for in the offense gravity score, the fact that it is 11:00 p.m., right. That the defendant is going inside with multiple people, one of whom is armed with a firearm. That is another aggravating circumstance.

> The Court also has to consider the defendant's prior periods of supervision and his prison adjustments, which have been unanimously poor. The pretrial sentence report details that his State prison time has been riddled with all types of infractions from drug offenses to a number of other things that are more minor.

> The Court also has in front of it – I understand that Ms. Houth has testified about what a good father he is, but the Court also has in front of it, evidence that he used those children to pass contraband on a prison visit. I mean the Court has a number of factors. The defendant's poor adjustment, his infractions, you know, even after being convicted. And it also has in front of it to whatever extent Your Honor wants to consider it the now more than a year that we have spent because of what the doctor characterizes as malingering behavior by this defendant, who the report makes very clear, was engaging in a series of actions that

- 15 -

were deliberately designed to mislead his lawyers and to mislead this Court.

And the Court can consider that to whatever extent that it thinks is aggravated. But, on the whole those are the aggravating circumstances that warrant an upward departure from the sentencing guidelines[.]

*Id.*, at 26-28.

The defense countered the Commonwealth's argument by pointing to numerous mitigating factors, including the following – Men was 30 years old at the time of sentencing, he never possessed the gun when he committed the burglary, he grew up without a father, he was devoted to his wife and children, he was bullied for being in special education classes, he attended a faith-based inmate recovery and mentoring program while receiving in-patient mental health treatment, and he had a drug and alcohol problem which started when he was approximately 12 years old. *Id.*, at 29-36.

As noted above, the judge sentenced Men to a term of eight to 16 years' incarceration for the burglary conviction and a concurrent term of eight to 16 years' imprisonment for the conspiracy conviction. The statutory maximum for each offense is 20 years. Men had a prior record score of RFEL, and the offense gravity score for the burglary and conspiracy charges were a nine. The Pennsylvania Sentencing Guidelines provide a standard sentencing range of 60-72 months, with an aggravated range of an additional 12 months for each conviction. Accordingly, the judge imposed sentences that exceeded the aggravated ranges.

The judge explained:

I have been doing this for a long time and I'm not sure that I ever sentenced somebody in the past on that person's seventh burglary. Burglaries are nonviolent crimes in the sense that if we're lucky nobody gets hurt physically. But they are extremely serious offenses.

Short of a physical attack with a weapon on another human being it's hard to imagine something that causes greater panic in the heart and mind of people then having their home broken into in the middle of the night by other people.

And you've been involved in that kind of conduct repeatedly. And I have no doubt that at least right now if you were released right now it wouldn't be long before you were back doing that again.

So the sentence I'm going to impose is a combination of what I think is an appropriate sentence for your history and an appropriate sentence for the nature of your history. And a sentence that has some measure not only of punishment but also of incapacitation. Because while you're locked up in the State System you won't be breaking into anybody else's house.

…

And this is a case where the Court as well as the jury had an opportunity to basically watch the crime being committed as well as hearing evidence about the crime because of the video system in the complainant's house.

I don't think that this conduct is more serious because the defendants knew there were people in the house. And the argument that it would have been worse if any of those people came downstairs is a possibility but it's equally possible based on what I saw that what actually happened and how this ended is a good thing rather than a bad thing from the point of view of the defendant's sentence because it's equally possible that what we were watching when we watched those videos were three people who were looking for something specific in that house downstairs. Three people who knew from the beginning that there were people upstairs. And maybe that those people included children upstairs.

And who when they couldn't find what they were looking for did not go upstairs but left the premises.

That doesn't make it less of a burglary, but it does make it in my view insufficient to provide the kind of evidence that in and of itself justified going, departing upward from the guidelines.

On the other hand, the nature of the defendant's record, the frequency and type of his offenses go beyond the mere calculation of his prior record score.

And that does in my view justify a sentence which is an upward departure from the guidelines.

…

And I want to say one more thing. And I want to say this to you directly, Mr. Men. And I don't know whether you're going to hear me, and I don't know whether you're going to care about this.

It doesn't say much for you as a father or as a neighbor to hear testimony from the mother of your children as to what a good father you may be in connection with your child and your child's mother when you consistently have made decision[s] in your life which have the consequences of removing you from that child's life. And this is something that I don't know whether I can get you to understand and grapple with and deal with. And if I can't I don't think that in terms of changing your behavior once you're out of jail has much of a chance.

It's [not] the DA. It's not the Court that's taking you away from your children and the mother of your children. It's you. It's decisions that you have made over and over and over again. You are not a good father. No matter how loving you may be when you're in that child's presence because a good father would not consistently engage in behavior which would take him away from that child and make that child grow up eventually with the knowledge that their father is a repeat felon. And their father consistently on his own without any prompting from anybody else made decisions to violate the law in the most serious way. Decisions that ultimately could only have the kind of consequences they're having today.

N.T., 12/11/2019, at 38-40.

We conclude Men's assertions are contradicted by the record. First, contrary to Men's argument, it was appropriate for the sentencing judge to consider the nature and circumstances of the offense at issue and Men's history and characteristics pursuant to Section 9781(d)(1). Second, while Men suggests that the sentencing judge discounted certain mitigating factors, the judge had the benefit of the PSI and we can reasonably infer the judge considered those factors, including Men's mental health and addiction issues. *See Commonwealth v. Ventura*, 975 A.2d 1128, 1135 (Pa. Super. 2009) ("Our Supreme Court has determined that where the trial court is informed by a pre-sentence report, it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed.").

We find the judge's comments at the sentencing hearing demonstrate that the judge adequately considered the factors listed in Sections 9721(b) and 9781(b) before imposing a sentence above the aggravated range of the guidelines. Moreover, the court's focus on Men's parental status, including the fact that he had been in and out of the children's lives because of incarceration and he even used one child to obtain contraband during a visit, established its consideration of the protection of the public and Men's rehabilitative needs. Rather than evidence of a focus on Men's status as a good or bad parent, it is clear the sentencing judge was attempting to impress upon Men that his

criminal history had consequences for his children, as well as himself. Given Men's long history of recidivism, this explanation was surely needed, even if, as the judge conceded, it was unlikely to influence Men.

Likewise, the record demonstrated the judge considered the applicable Sentencing Guidelines, and determined that an upward departure from the guidelines was proper, particularly given his long and extensive history of committing burglaries.

Lastly, we find the judge sufficiently stated his reasons on the record for imposing a sentence that exceeded the Sentencing Guidelines. Additionally, those reasons are clearly rational reasons to deviate from the Guidelines. Therefore, Men has not demonstrated that his sentence was "unreasonable." 42 Pa.C.S.A. § 9781(c)(3). Accordingly, Men's discretionary sentencing argument fails, and we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/5/21